IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BRENT LEVI VICTOR McGILTON,

    Petitioner,

v.                                                            Civil Action No. 3:13cv73

DAVID BALLARD, Warden

    Respondent.

## REPORT & RECOMMENDATION

### I. INTRODUCTION

On June 21, 2013, Brent McGilton, the petitioner, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, wherein he challenges his state conviction in Ohio County, West Virginia, as a violation of double jeopardy. On July 25, 2013, the Court ordered the respondent to show cause why the petition should not be granted. The respondent did so by filing a motion for summary judgment on August 21, 2013. The Court then issued a *Roseboro*[1] notice informing the petitioner of his right to file responsive materials. The petitioner timely responded, and accordingly, the motion for summary judgment is now ripe for this Court's review.

### A. Background and Conviction

On November 22, 2009, the petitioner stabbed his wife numerous times during an argument in their home. She was stabbed twice in the neck, multiple times in the back of her head, once in the ankle, and once in the back of her leg. The victim said that while the petitioner was stabbing her, he stated that he was "going

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975.)

1

to fu*king kill [her]." The victim managed to escape, get to the bathroom and call 911.

Officer Kenneth Parker of the Wheeling Police Department was just a few blocks away, when he received the call from dispatch notifying him of the stabbing. He stated that he arrived at the scene of the crime in less than one minute. Officer Parker testified that the petitioner was arrested after a failed attempt to escape. The victim was then taken to the hospital for treatment of her injuries. Thereafter she returned home, and went to sleep. When she awakened, the petitioner had been released from police custody and was standing at the foot of her bed. He once again threatened to kill her stating that "he didn't want to go back to jail [and] if he was to go to jail, . . . he would do it right next time and he would go to Iowa."

The January term of the Ohio County Grand Jury returned a bill of indictment charging the petition with three counts of malicious assault and one count of assault during commission of a felony. On June 22, 2010, the petitioner's trial began. During pre-trial motions, counsel for the petitioner moved for dismissal of the charge of assault during commission of a felony based upon double jeopardy grounds; he did not raise any double jeopardy arguments regarding the three separate counts of malicious assault. The circuit court dismissed the assault during commission of a felony count, and the case proceeded on three charges of malicious assault. On June 23, 2010, the petitioner was found guilty of all three counts of malicious assault.

On August 2, 2010, prior to his sentencing hearing, a recidivist trial was held wherein the jury found the petitioner to be the same person convicted of the felony of wanton endangerment on April 21, 2005. In consideration of his prior conviction,

one of the malicious assault sentences was later enhanced by doubling the minimum sentence. On June 12, 2011, the petitioner was sentenced to 2 to 10 years on the first count of malicious assault, two to 10 years on the second count of malicious assault, and 4 to 10 years on the third count of malicious assault.

***B. Direct Appeal***

The petitioner filed a petition for direct appeal with the West Virginia Supreme Court on July 13, 2011, alleging a single assignment of error:

> The trial court violated petitioner's double jeopardy protection by sentencing petitioner for three counts of malicious assault for three wounds caused during a single event.

(Doc. 17-8, p. 5).

The State of West Virginia filed a brief in response on September 27, 2011. (Doc. 17-9). The petitioner filed a reply brief on October 19, 2011. (Doc. 17-10). The West Virginia Supreme Court of Appeals affirmed the petitioner's conviction by judicial opinion published on June 19, 2012. State v. McGilton, 729 S.E.2d 876 (W.Va. 2012). The petitioner did not seek relief by writ of certiorari.

***C. State Post-Conviction Proceedings***

On August 14, 2012, the petitioner, proceeding *pro se*, filed a petition for post-conviction relief pursuant to W.Va. Code § 53-4A-1 in the Circuit Court of Fayette County.[2] He alleged the following grounds for relief:

1. Counsel's failure to enter certain unnamed and unidentified papers

---

[2] Although it is not reflected in the record, the matter was clearly transferred to the state habeas court in Ohio County. It would appear that at the time he filed the petition, he was incarcerated at the Mount Olive Correctional Complex which is located in Fayette County.

as exhibits constituted ineffective assistance of counsel.

2. Counsel's failure to submit a doctor's testimony "in the exhibits" constituted ineffective assistance of counsel.

3. New evidence in the form of photos and a police officer said he would be more than willing to testify as to what he knows about petitioner being held hostage in Martin's Ferry, Ohio.

4. Unconstitutional failure of prosecution to disclose evidence favorable to petitioner. Petitioner goes on to argue that the knife used during his trial was tampered with and the prosecution "could not pull prints" off the knife. The knife should have been suppressed.

(Doc. 17-11)

After reviewing the petition, the Ohio County State Habeas Court, by order entered July 4, 2013, found that grounds 1 & 2 were not sufficiently pled under W.Va. Code § 53-4A-2, and grounds 3 & 4 were without merit per se. (Doc. 17-12).The petitioner has never appealed the state habeas court's order.

On March 6, 2013, the petitioner filed a habeas petition directly with the West Virginia Supreme Court pursuant to Rev. R.A.P 16(a). (Doc. 17-13). By order entered on June 10, 2013, the West Virginia Supreme Court summarily denied the petition. (Doc. 17-14).

***D. Federal Proceedings***

On June 21, 2013, the petitioner filed the present petition for habeas relief pursuant to 28 U.S.C. § 2254, raising the same ground he raised on appeal to the West Virginia Supreme Court:

> The trial court violated his constitutional protection against double jeopardy by sentencing him for three counts of malicious assault for three wounds caused during the same criminal transaction.

## II. STANDARD OF REVIEW

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

In viewing the motion for summary judgment, the Court must do so under the constraints imposed by the habeas statue. Under § 2254, this Court may not grant federal habeas relief unless it concludes that West Virginia's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1); *see also* Williams v. Taylor, 529 U.S. 362 (2000). A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 405. A state court decision "involves an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), if the state court decision "identifies

the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412. An objectively "unreasonable application of federal law is different from an incorrect or erroneous application of federal law." Id. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable" for habeas relief to be granted. Id. at 411.

As these principles make clear, § 2254(d) imposes a powerful limit on the relitigation of claims that have already been rejected by state courts:

> [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332 n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

Harrington v. Richter, 131 S.Ct. 770, 786–87 (2011). A habeas petitioner proceeding under § 2254 bears the burden of showing that he is entitled to habeas relief under this highly deferential standard.

Finally, determinations of factual issues by the state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by

6

clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010). This standard "reflects Congress's view that there is no reason for a do-over in federal court when it comes to facts already resolved by state tribunals." Id. Accordingly, courts should not "casually cast aside a state court's factual findings. Id.

### *III. DISCUSSION*

Under the Double Jeopardy Clause of the Fifth Amendment, no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The double jeopardy prohibition -"a fundamental ideal in our constitutional heritage"- applies "to the States through the Fourteenth Amendment." Benton v. Maryland, 395 U.S. 784, 794 (1969).

The Double Jeopardy Clause protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. Brown v. Ohio, 432 U.S. 161, 165 (1977). In this case, the petitioner was not charged with two distinct statutes; he instead was charged with multiple violations of one statute. Therefore, his multiple punishment claim does not present the more frequently arising issue of whether two different statutes may punish the same conduct, *see* Blockburger v. United States, 284 U.S. 299, 303-04 (1932), but the less frequently recurring issue of whether multiple punishments may be imposed for more than one violation of a single statute. *See* United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 224-26

7

(1952); Bell v. United States, 349 U.S. 81. 81-84 (1955). Thus, this matter requires a determination of the "allowable units of prosecution," Universal C.I.T. 344 U.S. at 2221, an inquiry that turns on the statutory text and the intent of the legislature, *see* Sambria v. United States, 437 U.S. 54, 69-70 (1978); Universal C.I.T, 344 U.S. at 221-24, with "ambiguity … resolved in favor or lenity," *see* Bell 349 U.S. at 83. The "appropriate unit of prosecution" is not a constitutional issue, but instead is determined by examining the legislative intent behind the statute. Ohio v. Johnson, 467 U.S. 493, 499 (1984).

In this case, the petitioner was charged with three counts of malicious wounding. Count One stated:

> That on or about November 22, 2009, in Ohio County, West
> Virginia, [the petitioner] committed the felony offense of
> "Malicious Assault" by unlawfully, feloniously and maliciously
> cutting, stabbing and/or wounding Angela McGilton **by cutting
> or stabbing her with a knife in the throat area** or by any other
> means causing her bodily injury with the intent to permanently
> maim, disfigure, disable, or kill the said Angela McGilton
> in violation of West Virginia Code § 61-2-9(a).

(Emphasis added). Count Two stated:

> That on or about November 22, 2009, in Ohio County, West
> Virginia, [the petitioner] committed the felony offense of
> "Malicious Assault" by unlawfully, feloniously and maliciously
> cutting, stabbing and/or wounding Angela McGilton **by cutting
> or stabbing her with a knife in the right neck area** or by any other
> means causing her bodily injury with the intent to permanently
> maim, disfigure, disable, or kill the said Angela McGilton
> in violation of West Virginia Code § 61-2-9(a).

(Emphasis added). Count Three stated:

> That on or about November 22, 2009, in Ohio County, West
> Virginia, [the petitioner] committed the felony offense of
> "Malicious Assault" by unlawfully the loan is so he and maliciously
8

> cutting, stabbing and/or wounding Angela McGilton **by cutting or stabbing her with a knife in the back of her head** or by any other means causing her bodily injury with the intent to permanently maim, disfigure, disable, or kill the said Angela McGilton in violation of West Virginia Code § 61-2-9(a).

(Emphasis added).

In addressing the allowable units of prosecution in this matter, the West Virginia Supreme Court of Appeals noted that, in general, "'[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect. Moreover, '[a] claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment.' 'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' As helpful as the various rules of statutory construction may be in determining legislative intent, perhaps the soundest guidance comes from the Supreme Courts admonition that we give the language of a statute a 'commonsensical meaning.'" State v. McGilton, 729 S.E.2d at 562 (internal citations omitted).

The West Virginia Supreme Court than undertook an extensive analysis of the units of prosecution allowable under W.Va. Code § 61-2-9(a) with resort to its rulings in State v. Green, 534 S.E.2d 395 (200), State v. Runner, 432 S.E.2d 39 (1993), and State v. Myers, 728 S.E.2d 122 (2012). Under this analysis, the Court found that multiple convictions are appropriate when a defendant performs separate acts that would support different violations of the same statute.

9

The Court then turned its attention to W.Va. Code § 61-2-9(a), the statute under which the petitioner was convicted. The statute provides as follows:

> If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony and, upon conviction, shall be punished by confinement in the penitentiary not less than two, nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall be guilty of a felony and, upon conviction, shall, in the discretion of the court, either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars.

The Court noted that the statute clearly and unambiguously sets forth the elements for a single violation of a malicious assault and concluded there is nothing in the statutory language that precludes a second charge of malicious assault when a second malicious assault actually occurs. As a result of its extensive analysis of the statute, the Court held that a defendant may be convicted of multiple offenses of malicious assault under West Virginia Code § 61-2-9(a) (2204) against the same victim even when the offenses were part of the same course of conduct, and such convictions did not violate the double jeopardy provisions contained in either the United States Constitution or the West Virginia Constitution as long as the facts demonstrate separate and distinct violations of the Statute.

Therefore, under West Virginia law, each distinct stabbing by the petitioner was a separate malicious assault against his victim and were properly charged as a separate count. The charges are not multiplicitous or in violation of the protections against double jeopardy.

For the foregoing reasons, the undersigned finds that the state decision in the petitioner's case was not contrary to, or an unreasonable application of, clearly established federal law. Further, the state court did not base its decision on an unreasonable application of the facts. Thus, the petitioner is not entitled to habeas relief under § 2254. Accordingly, the undersigned recommends that the respondent's Motion for Summary Judgment (Doc. 17) be **GRANTED** and the habeas petition be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen [14] days of the filing of this recommendation, file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge of record. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the pro se petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to counsel of record via electronic means.

DATED: December 17, 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE