# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**BRENT LEVI VICTOR McGILTON,**

    Petitioner,

v.                                          **CIVIL ACTION NO. 3:13-CV-73**
                                                   **(JUDGE GROH)**

**DAVID BALLARD, Warden,**

    Respondent.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

### I. Introduction

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge John S. Kaull. Pursuant to Rule 2 of the Local Rules of Prisoner Litigation Procedure, this action was referred to Judge Kaull for submission of a proposed Report and Recommendation ("R&R"). Judge Kaull filed his R&R [Doc.23] on December 17, 2013. In that filing, he recommended that this Court grant Respondent's Motion for Summary Judgment [Doc. 17] and dismiss with prejudice Petitioner's habeas corpus petition.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or

1

recommendation to which no objections are addressed. Thomas v. Arn, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

In this case, objections to Magistrate Judge Kaull's R&R were due within fourteen (14) days after being served with a copy of the R&R pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. Petitioner timely filed his objections on December 27, 2013. Accordingly, this Court will undertake a *de novo* review of those portions of Judge Kaull's findings to which objection is made. This Court will review the remainder of the R&R for clear error.

## II. Background

### A. Factual Background

#### 1. Underlying Conviction

On November 22, 2009, Petitioner Brent McGilton stabbed his wife Angela McGilton several times during an argument in their home. Petitioner stabbed his wife twice in the neck, multiple times in the back of her head, once in the ankle, and once in the back of her leg. While Petitioner was stabbing his wife, he threatened that he was "going to fu*king kill [her]." His wife managed to escape the attack, get to the bathroom, and call 911.

Officer Kenneth Parker of the Wheeling Police Department received the call from dispatch notifying him of the stabbing, and he was able to arrive at the scene of the crime

2

in less than one minute. Officer Parker testified that Petitioner was arrested after a failed attempt to escape. Petitioner's wife was taken to the hospital and received treatment for her injuries. She then returned home and went to sleep. When she awoke, Petitioner had been released from police custody and was standing at the foot of the bed. He once again threatened to kill her stating that "he didn't want to go back to jail [and] if he was to go to jail, . . . he would do it right next time and he would go to Iowa."

The January 2010 term of the Ohio County Grand Jury returned a bill of indictment charging Petitioner with three counts of malicious assault and one count of assault during commission of a felony. On June 22, 2010, Petitioner's trial began. During pre-trial motions, Petitioner's counsel moved for dismissal of the charge of assault during commission of a felony based upon double jeopardy groups. Petitioner's counsel did not raise any double jeopardy arguments regarding the three separate counts of malicious assault. The circuit court dismissed the assault during commission of a felony count, and the case proceeded on three charges of malicious assault. On June 23, 2010, a jury found Petitioner guilty of all three counts of malicious assault.

On August 2, 2010, prior to Petitioner's sentencing hearing, a recidivist trial was held. The jury found Petitioner to be the same person convicted of the felony of wanton endangerment on April 21, 2005. In consideration of his prior conviction, one of the malicious assault sentences was later enhanced by doubling the minimum sentence. On June 21, 2011, Petitioner was sentenced to two to ten years on the first count of malicious assault, two to ten years on the second count of malicious assault, and four to ten years on the third count of malicious assault.

## 2. Direct Appeal

On July 13, 2011, Petitioner filed a petition for direct appeal with the West Virginia Supreme Court alleging that "[t]he trial court violated [his] double jeopardy protection by sentencing [him] for three counts of malicious assault for three wounds caused during a single event." [Doc. 17-8, p. 5]. On September 27, 2011, the State of West Virginia filed a response brief. On October 19, 2011, Petitioner filed a reply brief. On June 19, 2012, the West Virginia Supreme Court of Appeals affirmed Petitioner's conviction. State v. McGilton, 729 S.E.2d 876 (W. Va. 2012). Petitioner did not seek relief by writ of certiorari.

## 3. State Post-Conviction Proceedings

On August 14, 2012, Petitioner, acting *pro se*, filed a petition for post-conviction relief pursuant to West Virginia Code § 53-4A-1 in the Circuit Court of Fayette County, which was later transferred to the state habeas court in Ohio County. Petitioner alleged four grounds of relief: (1) ineffective assistance of counsel because his attorney failed to enter certain unnamed and unidentified papers as exhibits; (2) ineffective assistance of counsel because his attorney failed to submit a doctor's testimony as an exhibit; (3) new evidence in the form of photos and a police officer who said he would be more than willing to testify as to what he knows about Petitioner being held hostage in Martin's Ferry, Ohio; and (4) unconstitutional failure of the prosecution to disclose favorable evidence to Petitioner because the prosecution tampered with the knife that was introduced at trial and the knife should have been suppressed because the prosecution "could not pull prints" off of it. [Doc. 17-11].

On July 4, 2013, after reviewing the petition, the Ohio County state habeas court

found that grounds one and two were not sufficiently pled under West Virginia Code § 53-4A-2 and that grounds three and four were without merit per se. [Doc. 17-12]. Petitioner did not appeal this order.

On March 6, 2013, Petitioner filed a habeas petition directly with the West Virginia Supreme Court pursuant to the Revised Rule of Appellate Procedure 16(a). On June 10, 2013, the West Virginia Supreme Court summarily denied the petition.

### 4. Federal Proceedings

On June 21, 2013, Petitioner filed this petition for habeas relief pursuant to 28 U.S.C. § 2254, containing the same grounds he raised on appeal to the West Virginia Supreme Court: that the trial court violated his constitutional protection against double jeopardy by sentencing him for three counts of malicious assault for three wounds caused during the same criminal transaction.

### B. Procedural History

On June 21, 2013, Petitioner Brent McGilton filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his state conviction in Ohio County, West Virginia as a violation of double jeopardy. On July 25, 2013, the Court ordered Respondent to show cause why the petition should not be granted. On August 21, 2013, Respondent filed a motion for summary judgment. On December 17, 2013, Judge Kaull issued a report and recommendation that recommended this Court grant Respondent's Motion for Summary Judgment and dismiss with prejudice Petitioner's habeas corpus petition. On December 27, 2013, Petitioner filed a one-page objection that objected to the "[w]hole order." Accordingly, this matter is ripe for the Court's review.

## III. Standard of Review

The United States Supreme Court and the Fourth Circuit Court of Appeals have recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80, 97 S. Ct. 1621, 1632-33 (1977); Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323-35; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

6

In viewing the motion for summary judgment, the Court must do so under the constraints imposed by 28 U.S.C. § 2254. Under § 2254, this Court may not grant federal habeas relief unless it concludes that West Virginia's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see Williams v. Taylor, 529 U.S. 362 (2000). A state court decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 405. A state court decision involves an unreasonable application of clearly established federal law if the state court decision "identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412. An objectively "unreasonable application of federal law is different from an incorrect or erroneous application of federal law." Id. Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable" for habeas relief to be granted. Id. at 411.

Thus, § 2254(d) imposes a powerful limit on the relitigation of claims that have already been rejected by state courts. Indeed, § 2254(d)

> preserves authority to issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the

7

> state criminal justice systems," not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011) (internal citation omitted). Therefore, a habeas petitioner proceeding under § 2254 bears the burden of showing that he is entitled to habeas relief under this highly deferential standard.

Finally, determinations of factual issues by the state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010). This standard "reflects Congress's view that there is no reason for a do-over in federal court when it comes to facts already resolved by state tribunals." Id. Accordingly, courts should not "casually cast aside a state court's factual findings." Id.

### IV. Discussion

Petitioner objects to Judge Kaull's report and recommendation by lodging a blanket objection, and he states he objects to "the [w]hole order" without citing any specific objection. However, Petitioner ultimately seems to object to Judge Kaull's conclusion that each distinct stabbing by Petitioner was a separate malicious assault against his victim and were properly charged as a separate count.

8

The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The prohibition against double jeopardy is "a fundamental ideal in our constitutional heritage" and it "appl[ies] to the States through the Fourteenth Amendment." Benton v. Maryland, 395 U.S. 784, 794 (1969). The Double Jeopardy Clause protects against three actions: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. Brown v. Ohio, 432 U.S. 161, 165 (1977).

In this case, Petitioner was not charged with two distinct statutes. Rather, he was charged with multiple violations of one statute. Therefore, his double jeopardy challenge arises under the third action: whether multiple punishments may be imposed for more than one violation of a single statute. See United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 224-26 (1952); Bell v. United States, 349 U.S. 81, 81-84 (1955). To determine this issue, the Court must determine the "allowable units of prosecution," which turns on the statutory text and the intent of the legislature. Universal C.I.T. Credit Corp., 344 U.S. at 221-24; see also Ohio v. Johnson, 467 U.S. 493, 499 (1984) (stating that "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent"); Sanabria v. United States, 437 U.S. 54, 69-70 (1978) (noting that Congress defines the statutory offense "by its prescription of the 'allowable unit of prosecution.'").

In this case, Petitioner was charged with three counts of malicious wounding. Count One stated:

9

> That on or about November 22, 2009, in Ohio County, West Virginia, [Petitioner] committed the felony offense of "Malicious Assault" by unlawfully, feloniously and maliciously cutting, stabbing and/or wounding Angela McGilton **by cutting or stabbing her with a knife in the throat area** or by any other means causing her bodily injury with the intent to permanently maim, disfigure, disable, or kill the said Angela McGilton in violation of West Virginia Code § 61-2-9(a).

(emphasis added).

> Count Two stated:

> That on or about November 22, 2009, in Ohio County, West Virginia, [Petitioner] committed the felony offense of "Malicious Assault" by unlawfully, feloniously and maliciously cutting, stabbing and/or wounding Angela McGilton **by cutting or stabbing her with a knife in the right neck area** or by any other means causing her bodily injury with the intent to permanently maim, disfigure, disable, or kill the said Angela McGilton in violation of West Virginia Code § 61-2-9(a).

(emphasis added).

> Count Three stated:

> That on or about November 22, 2009, in Ohio County, West Virginia, [Petitioner] committed the felony offense of "Malicious Assault" by unlawfully, feloniously and maliciously cutting, stabbing and/or wounding Angela McGilton **by cutting or stabbing her with a knife in the back of her head** or by any other means causing her bodily injury with the intent to permanently maim, disfigure, disable, or kill the said Angela McGilton in violation of West Virginia Code § 61-2-9(a).

(emphasis added).

In determining the allowable units of prosecution, the West Virginia Supreme Court stated that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full

force and effect." McGilton, 729 S.E.2d at 884 (internal citation and quotation marks omitted). Therefore, "[a] claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment." Id. The legislative intent of a clear and unambiguous statute is determined by its "plain meaning," which means giving the language of a statute a "commonsensical meaning." Id.

The West Virginia Supreme Court of Appeals has made clear that "multiple convictions are appropriate where a defendant performs separate acts that would support different violations of the same statute." Id. at 887. In determining the allowable units of prosecution under West Virginia Code § 61-2-9(a), the West Virginia Supreme Court of Appeals found that "the Legislature's intention is plain and the statute is clear and unambiguous." Id. The statute provides:

> If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony and, upon conviction, shall be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall be guilty of a felony and, upon conviction, shall, in the discretion of the court, either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars.

W. Va. Code § 61-2-9(a). Upon reviewing the statute, the Court concluded that it "clearly and unambiguously sets forth the elements for a single violation of a malicious assault. There is nothing whatsoever in the statutory language that precludes a second charge of malicious assault when a second malicious assault actually occurs." McGilton, 729 S.E.2d at 888. The Court pointed out that the statutory language

11

provides that "both the conduct ('stab') and the result of the conduct ('cause him bodily injury') are phrased as singular terms. . . . the singular nature of the statute represents a legislative intent to punish *each violation of the statute separately*." Id. (emphasis added). Therefore, the Court held that "a defendant may be convicted of multiple offenses of malicious assault under West Virginia Code § 61-2-9(a) (2004) against the same victim even when the offenses were a part of the same course of conduct" and the convictions "do not violate the double jeopardy provisions . . . as long as the facts demonstrate separate and distinct violations of the statute." Id. at 889.

Upon review of Petitioner's claim, each distinct stabbing by Petitioner was a separate malicious assault against his victim and were properly charged as a separate count. In Count One, Petitioner cut or stabbed Angela McGilton with a knife in the throat area. In Count Two, Petitioner cut or stabbed Angela McGilton with a knife in the right neck area. Finally, in Count Three, Petitioner cut or stabbed Angela McGilton with a knife in the back of her head. Although Petitioner's actions may have been part of the same course of conduct, they were separate and distinct violations of the statute. Accordingly, the charges are not in violation of the protections against double jeopardy.

### V. Conclusion

Upon careful review of the record, it is the opinion of this Court that the magistrate judge's Report and Recommendation should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated therein. Further, Petitioner's Objections are **OVERRULED**. It is further ordered that Respondent's Motion for Summary Judgment is **GRANTED** and Petitioner's § 2254 petition is **DENIED and DISMISSED**

**WITH PREJUDICE** and **STRICKEN** from the active docket of this Court.

As a final matter, because this Court has dismissed Petitioner's constitutional claims on procedural grounds, a certificate of appealability will not issue unless Petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Upon an independent review of the record, this Court finds that Petitioner has not made the requisite showing. Accordingly, this Court hereby **DENIES** a certificate of appealability. See 28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and to mail a copy to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter.

**DATED**: January 6, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE